UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
GREENEVILLE

SARAH A. RABY )
 )
V. ) NO. 2:15-CV-81
 )
CAROLYN W. COLVIN, )
Acting Commissioner of Social Security )

# REPORT AND RECOMMENDATION

This matter is before the United States Magistrate Judge, under the standing orders of the Court and 28 U.S.C. § 636 for a report and recommendation. Plaintiff's application for disability insurance benefits was denied following a hearing before an Administrative Law Judge ["ALJ"]. This is an action for judicial review of that adverse decision. Both the plaintiff and the defendant Commissioner have filed Motions for Summary Judgment [Docs. 11 and 14].

The sole function of this Court in making this review is to determine whether the findings of the Commissioner are supported by substantial evidence in the record. *McCormick v. Secretary of Health and Human Services,* 861 F.2d 998, 1001 (6th Cir. 1988). "Substantial evidence" is defined as evidence that a reasonable mind might accept as adequate to support the challenged conclusion. *Richardson v. Perales*, 402 U.S. 389 (1971). It must be enough to justify, if the trial were to a jury, a refusal to direct a verdict when the conclusion sought to be drawn is one of fact for the jury. *Consolo v. Federal Maritime Commission*, 383 U.S. 607 (1966). The Court may not try the case *de novo* nor resolve conflicts in the evidence, nor decide questions of credibility. *Garner v. Heckler*,

745 F.2d 383, 387 (6th Cir. 1984). Even if the reviewing court were to resolve the factual issues differently, the Commissioner's decision must stand if supported by substantial evidence. *Liestenbee v. Secretary of Health and Human Services,* 846 F.2d 345, 349 (6th Cir. 1988). Yet, even if supported by substantial evidence, "a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Bowen v. Comm'r of Soc. Sec.,* 478 F.3d 742, 746 (6th Cir. 2007).

The plaintiff was born on December 15, 1964. Thus, she was 46 on her alleged disability onset date of January 26, 2011, and 48 years of age at the time of the ALJ's adverse decision. She has a high school education, and all parties agree that she cannot return to her past relevant work.

Plaintiff's medical history is set forth in the Commissioner's brief as follows:

> On January 26, 2011, Plaintiff suffered a cerebrovascular accident and was hospitalized through January 31, 2011, and then transferred for in-patient rehabilitation (Tr. 158-63, 189-247, 285-87, 395-409, 418-20, 442-52, 455-69). On April 14, 2011, Michael Vavra, M.D., noted Plaintiff still had some significant difficulty communicating (Tr. 280, 312, 412). The doctor opined that Plaintiff was not ready to return to work and anticipated an additional three-to-six months before Plaintiff could return to her previous employment (Tr. 280, 312, 412).
> Plaintiff began speech therapy on February 7, 2011 (Tr. 186-88, 274-76). By May 11, 2011, Plaintiff reported word retrieval errors occasionally but at therapy she was able to converse normally without evidence of word finding errors (Tr. 165-85, 251-76). The therapist noted that Plaintiff had done well in speech therapy and had met all of her goals (Tr. 165, 252). The therapist indicated that Plaintiff would continue to improve with use of home exercises and discharged her from speech therapy (Tr. 165, 252).
> Plaintiff returned to Dr. Vavra on October 5, 2011, and reported that her speech was improving but was somewhat difficult in the early afternoon and with multi-tasking (Tr. 279, 305, 310-11, 411, 436). Dr. Vavra noted she was having less trouble with word finding (Tr. 279, 305, 310-11. 411, 436). Plaintiff returned six months later, on April 4, 2012 and stated that her speech was better but reported problems with attention and concentration (Tr. 309, 410).

2

On May 11, 2012, Kathy Jo Miller, a psychological examiner, and Robert Spangler, Ed.D., a psychologist, performed a consultative psychological evaluation of Plaintiff (Tr. 317-21). Plaintiff stated that she continued to have problems with word retrieval and with focus when more than one person was talking (Tr. 318). Mental status examination showed normal mood and affect and good concentration (Tr. 319). The examiners noted "some problems with word retrieval . . . but [they were] very mild" (Tr. 319). Dr. Spangler and Ms. Miller reported that Plaintiff's primary care doctor had prescribed an anti-depressant after Plaintiff's stroke due to anxiety over speech difficulties, but Plaintiff felt like she no longer needed it (Tr. 320). The examiners observed that Plaintiff did have "problems with word retrieval that would cause delay in her response to questions but she always answered appropriately" (Tr. 320). They noted that Plaintiff's ability to sustain concentration and persistence was adequate on examination, but Plaintiff reported mild problems with concentration when in groups of people (Tr. 321).

On June 1, 2012, Dorothy Tucker, Ph.D., a state agency psychological consultant, reviewed Plaintiff's records and indicated that Plaintiff's aphasia due to stroke and adjustment disorder with depressed mood, resolved, resulted in only mild difficulties in maintaining concentration, persistence, or pace (Tr. 324-34). Jayne Dubois, Ph.D., also a state agency psychological consultant, reviewed the record on November 13, 2012, and affirmed Dr. Tucker's opinion (Tr. 394).

On June 7, 2012, Alicia Baptista and Taylor Brown, both speech language pathologists, conducted a consultative speech and language evaluation of Plaintiff (Tr. 338-68). The examiners noted that Plaintiff's speech was "100% intelligible" with no speech errors, but her speech rate was occasionally "very mildly slow" (Tr. 338). They noted two episodes of phonemic paraphasia but characterized these episodes as mild and self-corrected (Tr. 340). Ms. Baptista and Ms. Brown noted that Plaintiff was "generally able to communicate within normal limits" but had some mild impairment in more complex tasks (Tr. 340).

Phyllis Fisher, a nurse practitioner, observed mildly impaired remote memory on examinations on June 26, 2012, and August 6, 2013 (Tr. 431, 476). On August 6, 2013, Ms. Fisher completed a questionnaire and reported that Plaintiff had "stammering difficulty with thought processing" and that Plaintiff's anxiety and depressive symptoms were "currently worsening" (Tr. 473).

[Doc. 15, pgs. 2-4].

At the administrative hearing, the ALJ called Donna Bardsley, a vocational expert ["VE"]. After asking her to categorize the plaintiff's past relevant work, he asked her to "assume she's restricted to light exertion physically with no exposure to hazards. Further assume that she's restricted to performing and maintaining concentration for only simple,

3

routine, repetitive tasks. And that she's limited to work that requires no public interaction. No more than occasional interaction with co-workers and supervisors….assume then a hypothetical person of her age, education, and level in work experience who had those limitations, would there be other jobs in the national economy they could perform?" Ms. Bardsley identified millions of jobs in the nation and several thousand in the state of Tennessee which such a person could perform. (Tr. 46).

The ALJ then asked Ms. Bardsley if there would be any jobs if the plaintiff had "a substantial loss or a marked loss in her ability to perform at least one of the basic mental demands of unskilled work…" referring to "Ms. Fisher's assessment regarding speech and communication…." (Tr. 47). Ms. Bardsley stated that with that limitation, there would be no jobs. Plaintiff's counsel at the hearing asked her to assume the person could not use her hands for repetitive motions, including fine manipulation, and whether that would affect the available job base. She replied that it would reduce it by at least 50 percent. (Tr. 48).

The ALJ rendered his hearing decision on October 31, 2013. He found that the plaintiff had severe impairments of the residual effects of a cerebrovascular accident, obesity, and an anxiety disorder (Tr. 15). He noted that since at least one severe impairment had been found at Step Two of the sequential evaluation process, it was his duty to consider the limitations and restrictions imposed by all of the plaintiff's impairments, including those he found were non-severe. Accordingly, he stated that he

4

also considered other impairments mentioned by plaintiff, which were a speech delay disorder, left ankle pain, and high cholesterol (Tr. 15).

With respect to the speech delay which came about as a result of the plaintiff's stroke in January 2011, the ALJ outlined her treatment, which showed continuing improvement in her speech as it progressed. He then noted the record from Mountain Region Speech and Hearing Center where plaintiff was evaluated by speech pathologists Baptista and Brown. That mostly positive report led him to find that the speech delay impairment now resulted in no more than a minimal non-severe limitation (Tr. 16).

The ALJ then considered the plaintiff's problem with her left ankle. He stated that plaintiff had undergone tendon repair surgery in November 2010, prior to her alleged onset date of January 26, 2011, and was seen for a physical therapy evaluation in December 2010. He says that the record does not indicate an ongoing evaluation or treatment in relation to the left ankle since the disability onset date. He notes that subsequent physical exams showed plaintiff has a normal gait and station and can move about in a satisfactory manner. Therefore, he found that this was not a severe impairment (Tr. 16-17).

He then addressed the plaintiff's assertion that her high cholesterol constituted a severe impairment. He stated that she was treated with medication for this condition, and the record showed "no evidence of significant complications in regard to this diagnosis." He therefore found that this also did not constitute a severe impairment (Tr. 17).

5

As part of his finding that the plaintiff did not have an impairment or combination of impairments which met or equaled the requirements of one of the listed impairments in the regulations, he discussed his findings regarding the plaintiff's mental functioning. In this regard, he found that she had a mild restriction in her activities of daily living, citing her daily activities. He found that she had moderate difficulties in social functioning based upon her testimony. He also found that she had moderate difficulties in concentration, persistence or pace. There were no episodes of decompensation. (Tr. 17-18).

The ALJ then stated his finding regarding the plaintiff's residual functional capacity ["RFC"]. As in his first hypothetical to the VE set out above, he found that the plaintiff had the RFC to perform light work, except she could have no exposure to hazards. He found she was able to perform simple, routine, repetitive tasks; was able to maintain concentration and persistence for such tasks; was limited to work that requires no interaction with the public and no more than occasional interaction with coworkers and supervisors (Tr. 18). He then turned to assessing the plaintiff's credibility regarding the intensity, persistence, and limiting effects of her medically determinable impairments. He found that she was no entirely credible (Tr. 18).

He discussed the plaintiff's stroke and her course of treatment. He mentioned that on April 14, 2011, Dr. Vavra, her treating neurologist, found that plaintiff was not ready to return to full-time employment and expected it would be three to six months before she could. Her follow up care at Dry Creek Medical Center showed decreased position sense

...
6

in the lower extremities and edema in August 2013. He noted that her physical exams "were generally unremarkable and indicated normal neurological exams with normal gait and station. The evidence shows the claimant's cerebral vascular accident has not resulted in disabling weakness, paralysis, or loss of control of the limbs. There is no evidence of disabling limitations of function from the residual effects of the cerebrovascular accident." (Tr. 19).

He then discussed plaintiff's obesity. She is 67 inches tall and weighs 200 pounds. He noted that Social Security Ruling ["SSR"] 02-1p requires that he consider the effects of her obesity in determining the plaintiff's ability to sustain work activity. He asserted that he had taken this into account in determining her RFC (Tr. 19-20).

He then discussed the August 6, 2013, medical assessment completed by Nurse Practitioner Phyllis Fisher, plaintiff's treating source at Dry Creek Medical Center. Nurse Fisher opined that plaintiff could sit for four hours, stand for one hour and walk for one hour in an eight hour work day. She opined that plaintiff could not use her hands bilaterally for pushing, pulling and fine manipulation, or bilaterally use her feet to run foot controls. Nurse Fisher opined that the plaintiff could lift up to 99 pounds occasionally and carry up to 50 pounds occasionally. While plaintiff could bend occasionally, Nurse Fisher opined she could not squat, crawl, climb or reach above shoulder level. She found plaintiff had a moderate restriction in operating a motor vehicle and a total restriction involving being around unprotected heights, moving machinery, marked temperature changes or exposure to dust, fumes and gas. The ALJ

7

noted that Nurse Fisher also said the plaintiff did not have significant or persistent disorganization of motor function (Tr. 20).

The ALJ mentioned that the State Agency doctors had found in 2012 that the plaintiff had no severe physical impairment (Tr. 20).

Regarding anxiety, the ALJ stated that she was treated for it with medication from her primary care provider at Dry Creek Medical Center. He noted that mental status examinations of plaintiff were essentially benign. He noted that she had not been referred to a mental health specialist for treatment and had not been hospitalized for any mental problem. He stated that the medical evidence indicated plaintiff could act in her own interest, communicate and handle her own affairs without significant difficulties. Therefore, he found that she was not entirely credible regarding the effects of her mental condition (Tr. 20). He mentioned the mental exam performed for the Commissioner on May 11, 2012, by Dr. Robert Spangler and psychological examiner Kathy Miller. They noted that plaintiff had minor speech problems but was "socially confident and comfortable." Other than noting a "mild" delay in word retrieval, Dr. Spangler and Ms. Miller indicated that the exam was essentially normal (Tr. 21). The ALJ also noted that in 2012, the State Agency doctors had found the plaintiff did not have a severe mental impairment. Based upon all of this, the ALJ found that the plaintiff was not completely credible regarding the effects of her mental impairment.

The ALJ then stated the weight given to the various medical opinions. He gave little weight to the State Agency physicians regarding their assessment of the plaintiff's

8

physical conditions, stating that "new evidence has been submitted" which was not in the record at the time they reviewed it (Tr. 21). He also gave little weight to the opinions of the State Agency mental health experts "because they are not well supported by medically acceptable clinical findings and are inconsistent with other substantial evidence as well as the claimant's hearing presentation." *Id.* He gave little weight to Dr. Spangler and Ms. Miller's evaluation for the same reasons. The ALJ said that the medical evidence supported "at least a finding of the severe impairments noted above…." He gave great weight to the opinion of the speech pathologists Baptista and Brown (Tr. 21). He gave little weight to Nurse Practitioner Fisher's opinions because they were "based heavily on the claimant's self-reports; not well supported by medically acceptable clinical findings and lab diagnostic techniques; inconsistent with other substantial medical evidence of record; and inconsistent with the claimant's benign clinical presentation and conservative treatment." (Tr. 21-22). He also gave little weight to the April 2011 statements of Dr. Vavra because they were based upon the plaintiff's condition at that time, assessed no specific limitations, and was "inconsistent with the medical record." (Tr. 22).

The ALJ then found that if the plaintiff were capable of a full range of light work, she would not be disabled under Rule 202.21 of the Medical-Vocational Guidelines, 20 CFR Part 404, Subpart P, Appendix 2. Since she did have additional limitations in her RFC, he relied upon the testimony of the VE and found that there were 10,800 jobs in the

9

local economy, and 3,050,000 jobs in the nation the plaintiff could perform. Accordingly, he found that she was not disabled (Tr. 22-23).

Plaintiff does not assert that the ALJ erred in his physical RFC findings. However, she asserts that the ALJ erred with respect to those portions of his RFC finding relating to her capabilities with respect to her mental impairment due to her anxiety and the after effects of her stroke in January 2011. Specifically, plaintiff argues that the ALJ's RFC finding, and the question to the VE which was based upon that finding, failed to account for the moderate limitations in concentration, persistence and pace which the ALJ found at Step Two of the evaluation process. Plaintiff also asserts that her medical records show deficits in concentration, persistence and pace which are not accounted for in the ALJ's RFC finding.

The ALJ in this case found that the plaintiff had more serious mental limitations than the State Agency psychologists or Dr. Spangler and Ms. Miller. Instead, as part of his analysis regarding whether the plaintiff met or equaled a listed impairment, he found that she has a moderate limitation with respect to concentration, persistence and pace. In other words, the ALJ found a higher level of limitation based primarily upon the plaintiff's hearing testimony. While he did not find the plaintiff totally credible in her subjective complaints, he nonetheless felt she had moderate difficulty in this area. Plaintiff is correct that the term "moderate" is not defined with any level of specificity and refers to proposed rule changes in 1991 which stated that as to "task completion," the term "moderate" meant the individual "frequently may not be able to complete complex

10

tasks without assistance or direction, and occasionally [is] unable to complete simple tasks.…" [Doc. 12, *Plaintiff's Memorandum,* pg. 4].

Plaintiff argues that the ALJ failed to include his finding of a moderate limitation in these areas anywhere in his RFC finding. She says that even though the ALJ stated in the RFC that she could "maintain concentration and persistence for simple, routine, repetitive tasks," this was a mere conclusion and "does not address the extent to which she would be off task during the workday or her actual pace limitations when working." Plaintiff suggests that as a result of *Ealy v. Commissioner of Soc. Sec.*, 594 F.3rd 504 (6th Cir. 2010), and other cases, merely limiting her to simple, routine, repetitive jobs with no contact with the public and only occasional contact with coworkers or supervisors does not account for the ALJ's finding of these moderate limitations, and that the VE's answer to the flawed hypothetical based on that RFC is not worthy of reliance.

"In order for a vocational expert's testimony in response to a hypothetical question to serve as substantial evidence in support of the conclusion that a claimant can perform other work, the question must accurately portray a claimant's physical and mental impairments." *Ealy*, 594 F.3d at 516. In *Ealy*, the ALJ asked the VE to "assume this person [is] limited to simple, repetitive tasks and instructions in non-public work settings." *Id*. at 516. In that case, the ALJ was relying upon the opinion of a state agency psychologist. The Sixth Circuit noted that the ALJ stated that his assessment was "consistent" with that of the psychologist. The problem was that it was not. One of the state agency psychologist's specific findings was that the ability of Mr. Ealy "to sustain

11

attention to complete simple repetitive tasks was limited to [two-hour] segments over an eight hour day where speed was not critical." *Id*. The Court stated that for the ALJ's hypothetical to accurately describe Mr. Ealy's situation, it would have to state that "the speed of his performance could not be critical to his job." *Id*. In the present case, there is no such special requirement, only a moderate limitation found by the ALJ himself.

In *Jackson v. Commissioner of Soc. Sec.*, 2011 WL 4943966, at * 4 (N.D. Ohio Oct. 18, 2011), the district court also addressed *Ealy*.

> *Ealy* does not require further limitations in addition to limiting a claimant to "simple, repetitive tasks" for every individual found to have moderate difficulties in concentration, persistence, or pace. *See Ealy,* 594 F.3d 504. Instead, *Ealy* stands for a limited, fact-based, ruling in which the claimant's particular moderate limitations required additional speed- and pace-based restrictions.

*Id.* In *Ealy,* as noted by the district court in *Jackson,* the claimant presented evidence that demonstrated the claimant's limited ability to maintain attention over time, even when performing simple, repetitive taks. *Id.* In this case, plaintiff has not presented any evidence to suggest that she has any greater limitations than those identified by the ALJ.

Likewise, in *Horsely v. Astrue*, 2013 WL 55637 (S.D. Ohio. 2013), the district court noted that post-*Ealy* there is not a bright line rule that a "limitation to simple repetitive tasks in an RFC and hypothetical to the VE is not adequate to address a claimant's moderate impairment as to concentration, persistence, and pace." *Horsely v. Astrue*, No. 1:11-CV-703, 2013 WL 55637, at *8 (S.D. Ohio Jan. 3, 2013) *report and*

*recommendation adopted sub nom. Horsley v. Comm'r of Soc. Sec.*, No. 1:11CV703, 2013 WL 980315 (S.D. Ohio Mar. 13, 2013)(quotations omitted).

This Court finds their reasoning persuasive in this regard as do later opinions from the Sixth Circuit. In *Smith-Johnson v. Commissioner*, 579 Fed. Appx. 426, 436-437 (6th Cir. 2014), the Sixth Circuit noted that in *Ealy* "[t]his court held that the RFC assessment and the hypothetical did not adequately reflect the claimant's limitations because it truncated the doctor's specific restrictions. *Smith-Johnson,* 579 F. App'x at 437.

But that is not the case here. The hypothetical question in the present case was adequate to express the limitations found by the ALJ, and this Court finds substantial evidence for those limitations. Plaintiff points to portions of the record from the time immediately following her stroke, and later examples of some level of slowed thought or trouble speaking. However, it is unquestionable that plaintiff made excellent progress in recovering from her stroke, and that often her limitations were referred to as being mild in nature. It is also telling that most of plaintiff's treatment after the initial period of recovery was very conservative in nature. The Court does not doubt that the plaintiff's stroke left her with limitations she did not have beforehand. But the ALJ accounted for those and found limitations beyond the medical opinions which would have supported a less restrictive RFC than he ultimately found.

The Court finds that there is substantial evidence to support the ALJ's RFC finding and his hypothetical question to the VE. Accordingly, it is respectfully recommended that the plaintiff's Motion for Summary Judgment [Doc. 11] be DENIED,

13

and the defendant Commissioner's Motion for Summary Judgment [Doc. 14] be GRANTED.[1]

                                                       Respectfully submitted,

                                                  s/ Clifton L. Corker
                                                 United States Magistrate Judge

---

[1] Any objections to this report and recommendation must be filed within fourteen (l4) days of its service or further appeal will be waived. 28 U.S.C. 636(b)(1).

14